FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KATHRYN K., | No. 2:18-CV-00067-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 18. Attorney Jeffrey Schwab represents Kathryn K. (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff filed an application for Disability Insurance Benefits (DIB) on May

ORDER GRANTING PLAINTIFF'S MOTION - 1

13, 2014, Tr. 104, 189, alleging disability since June 1, 2008,[1] Tr. 191, due to epilepsy, congenital hip dysplasia, labral tear, back problems, fibromyalgia, lupus, stomach problems, cholesterol, arthritis, seizures, thyroid, anxiety, high blood pressure, and chronic pain. Tr. 251. The application was denied initially and upon reconsideration. Tr. 130-32, 139-42. Administrative Law Judge (ALJ) Jesse K. Shumway held a hearing on June 14, 2016 and heard testimony from Plaintiff, medical expert Judy Panek, M.D., and vocational expert Rebecca Hill. Tr. 40-90. The ALJ issued an unfavorable decision on August 16, 2016.[2] Tr. 18-28. The Appeals Council denied review on January 3, 2018. Tr. 1-6. The ALJ's August

---

[1] Despite alleging an onset of June 1, 2008, Social Security consistently lists her date of onset as November 15, 2011. Tr. 105, 112, 204. The ALJ's decision lists Plaintiff's date of onset as October 30, 2011. Tr. 18. At the hearing, the date of October 30, 2011 was pulled from Exhibits 2A and 4A, which are from a previous application. Tr. 46. Plaintiff did not challenge the onset date in her briefing before this Court. ECF Nos. 14, 19. However, considering the case is being remanded because the ALJ too narrowly scrutinized the evidence based on the onset date, the ALJ will make a new finding of Plaintiff's Established Onset Date in accord with S.S.R. 18-1p and request records from the school district to accurately determine the date Plaintiff stopped working.

[2] Plaintiff had a prior application for benefits filed on July 30, 2012 that addressed the same period currently before the Court. Tr. 92. That application was denied at the initial application and at reconsideration. Tr. 124, 128. The ALJ addressed the application in his decision, stating "I do not find a basis for reopening the claimant's prior Title II application." Tr. 18. However, by making a determination of disability covering the same time period as the July 2012 application, the ALJ de facto reopened the July 2012 application. *See Lewis v. Apfe*, 236 F.3d 503, 510 (9th Cir. 2001).

16, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g). Plaintiff filed this action for judicial review on February 23, 2018. ECF Nos. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 52 years old at the date of onset identified by the ALJ. Tr. 191. She had completed three years of college. Tr. 252. Her reported work history includes being a director, teacher, and owner at a private daycare/preschool, a loan officer, and a director and teacher at a public preschool. *Id*. When applying for benefits in July of 2012 Plaintiff reported that she stopped working on September 28, 2011 because she was fired, but that her conditions stopped her from working as of October 30, 2011. Tr. 219. In her current application, Plaintiff reported that she stopped working on November 15, 2011 because of her conditions. Tr. 252. At the hearing, Plaintiff reported that she could not recall the exact date that she stopped work, but the job ended just a couple weeks after school began, "I got called in and said that - - they said that it just wasn't working out," and referred to physical difficulties of helping the children climb two flights of stairs to use the restroom. Tr. 55.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as

being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. § 404.1520(a). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 404.1520(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 16, 2016, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act from October 30, 2011 through Plaintiff's date last insured, December 31, 2011.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity in this period. Tr. 20.

At step two, the ALJ determined that Plaintiff had the following severe impairments during this period: fibromyalgia; irritable bowel syndrome; lumbar degenerative disc disease; obesity; and partial tear gluteus minimus. Tr. 20.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments during this period. Tr. 22.

At step four, the ALJ assessed Plaintiff's residual function capacity for this period and determined she could perform a range of light work with the following limitations:

> she cannot climb ladders, ropes, or scaffolds; she can frequently balance and stoop; she can only occasionally climb ramps and stairs, kneel, crouch, and crawl; she requires ready access to a restroom; she can have only occasional exposure to extreme cold, and no exposure to hazards, including unprotected heights and moving mechanical parts; and she can have exposure to only moderate noise levels.

Tr. 23. The ALJ identified Plaintiff's past relevant work as a director at a daycare center, loan officer, and mail clerk. Tr. 27. He found that Plaintiff could perform this past relevant work as generally performed. *Id*. He then made two alternative step four determinations: (1) that if Plaintiff were limited to sedentary work with one absence per month, she would still be capable of performing the director at a daycare and the loan officer jobs as generally performed; and (2) if Plaintiff were absent up to three times per month, she would still be able to perform the loan officer job as actually performed. Tr. 28.

The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from October 30, 2011, through the date Plaintiff was

last insured, December 31, 2011. *Id*.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly address Plaintiff's symptom statements and (2) failing to make a proper step four determination.

## DISCUSSION[3]

### 1. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 14 at 10-14.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

---

[3]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

ORDER GRANTING PLAINTIFF'S MOTION - 6

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. In doing so, he repeatedly limited his consideration of the evidence from October 30, 2011 to December 31, 2011. Tr. 24-26. This rigid approach to limiting evidence for consideration resulted in an illogical rejection of Plaintiff's statements of her symptoms and their reported severity. Therefore, the ALJ's determination cannot be supported by substantial evidence and a remand is required to properly address Plaintiff's symptom statements.

Specifically, the ALJ rejected Plaintiff's statements because (1) they were not supported by her reported activities, (2) they were inconsistent with her ability to perform work at the light to medium level just prior to onset, (3) they were inconsistent with her twenty year history of working with these same impairments, and (4) they were inconsistent with the medical evidence. Tr. 24-26.

### A. Reported Activities

The ALJ's first reason for rejecting Plaintiff's symptom statements, that they were inconsistent with her reported activities, is not supported by substantial evidence.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603. Furthermore, that Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent

with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ found that Plaintiff's ability to provide for her personal care, prepare meals, grocery shop once a week and spend time with others were inconsistent with Plaintiff's "general allegation of disability from fatigue and pain, and that the claimant's specific allegation that she could walk only 20 yards." Tr. 24. In August of 2014, Plaintiff completed a function report in which she stated she could walk "20 yards, depending on day [*sic*]" before needing to stop and rest. Tr. 284. Here, the ALJ failed to state how the ability to walk 20 yards before needing to stop and rest was inconsistent with her activities of personal care, preparing meals, grocery shopping once a week, and spending time with others. The ALJ failed to account for Plaintiff's statements that while she can complete these activities, she did so with help and several rests. Plaintiff stated that her husband helped her bathe and depending on the difficulty of the day, her husband helped her cook. Tr. 280. She stated she prepared her own meals, but clarified "Sometimes, such as a bowl of cereal or sandwich, generally husband cooks," and indicated that her conditions caused problems standing and preparing meals. Tr. 281. She stated that she shopped for groceries in stores "usually once a week and as short of a time as possible, but with my husband[']s help." Tr. 282. By the June 2016 hearing, she stated that her husband did most of the shopping back in 2011 and at the present. Tr. 79. As such, the ALJ's determination that Plaintiff's reports of limited activities were inconsistent with her symptom statements is not supported by substantial evidence.

**B.     Work Prior to Onset**

The ALJ's second reason for rejecting Plaintiff's symptom statements, that they were inconsistent with her ability to perform work at the light to medium level just prior to onset, is not supported by substantial evidence.

The ALJ found that there was "no evidence suggesting she declined

substantially between the end of her employment in October of 2011 and the end of her insured period in December 2011, reducing her work capacity from light/medium to less than sedentary such that she would be unable to perform her sedentary past work." Tr. 24. The ALJ assumes that Plaintiff was physically capable of performing her job on a sustained basis up until her employment ended. However, this is not how the Social Security Administration evaluates the onset of disabilities with a nontraumatic origin. As a claimant works, her condition deteriorates to the point she can no longer work, then she files an application for benefits. Social Security accounts for this natural disease progression in S.S.R. 83-20 which requires the ALJ to consider the applicant's allegations, the work history, and the medical evidence when coming to an onset date in impairments with nontraumatic origins. In October of 2018, this S.S.R. was rescinded and replaced with S.S.R. 18-1p, which recognizes that the date of onset is the date an applicant meets both the non-medical and the medical requirements of disability. Therefore, the Agency has consistently found that while the date of onset is a single date on the calendar that must be determined for procedural reasons, the onset of an impairment can involve disease progression and failed attempts at work. Here, Plaintiff stated that she was fired two weeks into the school year following an inability to take the stairs. Tr. 55. Therefore, the ALJ's conclusion that Plaintiff was fully capable of her medium/light job until the day she was fired and then had to produce evidence of a sudden reduction in her functional ability between October 2011 and December 2011 is not supported by the record and is not supported by agency rulings.

      The ALJ further notes that when Plaintiff was asked why she could not perform her loan officer job, the only reason she was able to identify was epilepsy, which was not a medically determinable impairment prior to the December 31, 2011 date last insured. Tr. 24. However, the ALJ failed to address her later testimony in which she stated that while self-employed at the loan officer position,

she missed an average of three days per month due to pain, headaches, and gastroparesis, Tr. 75-77, and that the fibromyalgia and irritable bowel syndrome were severe impairments prior to the date last insured, Tr. 20. As such, the ALJ again mischaracterized Plaintiff's testimony.

The ALJ also pointed to Plaintiff's testimony that "she was advised that she could continue working sitting down after experiencing the tear in her gluteus minimus. Thus, the claimant's own testimony does not support a finding of disability as of the date last insured." Tr. 24. However, the ALJ failed to include her testimony that this limitation to "teaching in a sitting down position," made completing her work "very hard," because she was teaching three and four-year-olds which required her to be on her knees. Tr. 54. The vocational expert testified that this position was performed at the medium exertional level. Tr. 73. Plaintiff was fired from her position two weeks after the school year began. Tr. 55. Therefore, the ALJ's conclusion that her limitation to sitting to teach demonstrated that she could still perform her job, is not supported by substantial evidence.

C. **Work History**

The ALJ's third reason for rejecting Plaintiff's symptom statements, that she was capable of working for twenty years with these impairments, is not specific and legitimate.

The ALJ made the following finding:

> the claimant had the same if not worse symptoms before her alleged onset date. For example, records for June of 2011 show that the claimant had loose stool, diarrhea, and nausea, but that she had had these symptoms for a while. Ex. B10F/10. In fact, her treatment provider noted that the claimant's symptoms of fibromyalgia had been present for at least 20 years. Ex. B11F/4. Her ability to work with these symptoms proves they are not disabling.

Tr. 25. Once again, the ALJ failed to recognize disease progression represented throughout the record and treated the onset date as a traumatic onset. It is illogical

to discredit Plaintiff's symptom statements because a few months prior to being fired she had an increase of symptoms.

The ALJ's second conclusion, that the presence of her fibromyalgia symptoms while working in the past demonstrated that they were not disabling later on, fails to consider the impairments and their severity in combination, and fails to recognize disease progression. As such, this reason fails to support the ALJ's determination.

### D. Medical Evidence

The ALJ's third reason for rejecting Plaintiff's symptom statements, that they were not supported by the objective medical evidence, is not specific, clear and convincing.

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, this reason alone is not sufficient to support a rejection of Plaintiff's symptom statements. *See Lester*, 81 F.3d at 834 (ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects.")

Here the ALJ found that Plaintiff's allegations were not supported because the examination findings from October of 2011 through December of 2011 showed normal to mild findings. Tr. 25. This alone is insufficient to support a rejection of Plaintiff's symptom statements.

Furthermore, by limiting the evidence considered to after the onset date, the ALJ failed to account for the longitudinal history and treatment course of Plaintiff's impairments. *See* S.S.R. 18-1p (requiring the adjudicator to consider all

the evidence in the claimant's case record and, in the case of non-traumatic impairments, the longitudinal history, treatment course, and length of the impairment's exacerbations and remissions). Defendant argues that Plaintiff's reliance on medical evidence from May, July, and August of 2011 are of limited weight because they predate her October 2011 onset date. ECF No. 18 at 7. As discussed above, an onset date of a nontraumatic origin impairment is the first date a claimant meets both the medical and nonmedical requirements of eligibility. S.S.R. 18-1p. A claimant does not stop working and suddenly develop a severe disabling impairment. Instead a person develops a severe disabling impairment, which then results in her work performance suffering until she is no longer capable of work. Therefore, the ALJ erred in limiting his analysis of medical evidence to only the two months between the onset date and the date last insured.

In conclusion, the ALJ failed to properly address Plaintiff's symptom statements. Therefore, the case is remanded for additional proceedings consistent with this order. Upon remand, the ALJ will gather the evidence from the school district that employed Plaintiff to determine when she stopped working. The ALJ will then use this information to determine the onset date in accord with S.S.R. 18-1p. The ALJ will then consider all the medical evidence leading up to the end of Plaintiff's employment and through the date last insured.

**2.     Step Four**

Plaintiff challenges the ALJ's step four determination alleging (1) the ALJ failed to make the required finding of facts under S.S.R. 82-62, (2) the hypothetical presented to the vocational expert was incomplete because the ALJ failed to properly address Plaintiff's symptom statements, and (3) the vocational expert's testimony regarding missed work and the loan officer job was inconsistent, and (4) Plaintiff's past work as a loan officer was an odd lot job and the ALJ refused to allow Plaintiff's attorney to develop testimony in support of an odd lot job. ECF No. 14 at 14-18.

Considering the case is being remanded for the ALJ to properly address Plaintiff's symptom statements, the ALJ will be required to make a new step four determination in accord with S.S.R. 82-62 and to call a vocational expert to provide testimony regarding Plaintiff's past relevant work.

**REMEDY**

Plaintiff urges the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits. ECF No. 14 at 18.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court remands for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even when the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the first prong of the credit-as-true rule is not satisfied because the record is not fully developed, and further proceedings are required to address Plaintiff's onset date and her past relevant work. Therefore, the case is remanded for additional proceedings. The ALJ will gather records from Plaintiff's prior employer to determine the date she stopped working, readdress Plaintiff's symptom statements in light of the evidence leading up to termination and through the date last insured, and make a new step four determination in accord with S.S.R. 82-62. The ALJ will call a vocational expert to testify at remand proceedings.

///

# CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part,** and the case is remanded for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED March 20, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE